United States District Court
Southern District of Texas
**ENTERED**
March 11, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

EAZ CHAY, JR.,                    §
                                 §
          Plaintiff,             §
                                 §
VS.                              §    CIVIL ACTION NO. 7:23-CV-206
                                 §
JOSE A. MONTIEL, *et al.*,       §
                                 §
          Defendants.            §
                                 §

## REPORT AND RECOMMENDATION

Plaintiff Eaz Chay, Jr., proceeding pro se, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Docket No. 1.) He has named multiple defendants, alleging a years-long and far-reaching conspiracy against him. (*See* Docket Nos. 1, 52-2.) Pending before the Court are "Defendants Jose A. Montiel and Edgar Hernandez's Rule 12 Motion to Dismiss" and "Defendant City of Pharr Police Department's Rule 12 Motion to Dismiss."[1] (Docket Nos. 29, 31.) In their dispositive motions, Defendants assert that Plaintiff's allegations in his pleadings are meandering, vague, confusing, and incoherent. (Docket No. 29, at 1; Docket No. 31, at 1.) Specifically, Defendants argue that none of Plaintiff's claims should survive dismissal under the Rule 12(b)(6) standard. (Docket No. 29, at 1-2; Docket No. 31, at 1-2.) Plaintiff has filed responses to the dispositive motions. (Docket Nos. 35, 39.)

After carefully considering the pleadings on file and the applicable law, the undersigned concludes that Defendants Montiel and Hernandez's Motion to Dismiss (Docket No. 29) should be GRANTED in part and DENIED in part, and that Defendant City of Pharr's Motion to

---

[1] In the interest of clarity and brevity, the undersigned will be addressing both dispositive motions in this report.

Dismiss (Docket No. 31) should be GRANTED in its entirety.  Specifically, as the undersigned has tried to make clear in her reports and recommendations to-date in this case, the catalyst to Plaintiff's allegations appear to be his arrest in 2021 by the Pharr Police Department.  Although he delves deeper and deeper into conspiracy theories and to what he self-titles as "The Enterprise," his allegations against Officers Montiel and Hernandez are shocking, to say the least.  However, allegations alone, do not a case, make.

Specifically, Plaintiff's claims of excessive force against Pharr Police Officers Montiel and Hernandez, in their individual capacity, have met the threshold that is required to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  **In other words, the motion to dismiss the claim of excessive force against Pharr Police Officers Montiel and Hernandez, in their individual capacity, should be DENIED.** However, all of Plaintiff's other claims, including his other claims against Defendants Montiel, Hernandez, as well as all of his claims against the City of Pharr, do not meet the threshold required.  Those claims are baseless, fatally conclusory, and more importantly, fail to assert a claim for relief that rises above the speculative level.

As such, it is recommended that Defendants Montiel and Hernandez's Motion to Dismiss (Docket No. 29) should be granted in part, and that Defendant City of Pharr's Motion to Dismiss (Docket No. 31) should be granted in its entirety.

## I. BACKGROUND

On June 26, 2023, Plaintiff filed this action alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983.  (Docket No. 1.)  In his Original Complaint, Plaintiff alleged that two officers with the Pharr Police Department—Jose A. Montiel and Edgar Hernandez—assaulted him during a traffic stop on June 26, 2021, when they slammed him on the ground, choked him,

and pistol-whipped him.  (*Id.* at 4.)  As a result of the alleged assault, Plaintiff claims that he "sustained scars and permanent injuries to both his knees, hands, shoulders and neck and C-spine and body." (*Id.* at 5; *see also* Docket No. 52-2, at 40 (Plaintiff continues to allege that he "suffered injuries, experienced pain and suffering, and ultimately, he has injuries to his hands, fingers, knees, shoulders, C-spine and head to the right side of his skull.").)

Plaintiff has attempted to amend his complaint several times, and through these attempts his allegations have continued to expand.  (*See* Docket Nos. 11, 27, 34, 52-2.)  In his latest pleading, he describes a far-reaching conspiracy which he calls "The Enterprise."  According to Plaintiff,

> At various times relevant to this civil rights complaint/indictment/information: [The City of Pharr], the defendant, and others known or unknown, were members and associates of the Enterprise, a criminal organization whose members and associates engages in acts of violences, including extortion and robbery "Under Color of Official right," Honest Service Fraud, oppression, assault, police misconducts, conflict of interest, favoritism self-dealing, Concealment and which operated principally in the United State Southern Division of Texas.

(Docket No. 52-2, at 21 (grammatical errors not corrected).)  He further alleges that the "purpose of the Enterprise [is] to protect Drug Trafficking in the Rio Grande valley and protect Medical Doctors and Insurance Liability." (*Id.* at 29.)  In addition, his allegations range in time from 1998 to present. (*See id.* at 29 ("1998"), 31 ("2003"), 1 ("2005"), 17 ("2013"), 26 ("2014"), 15 ("2017"), 7 ("2021").)

Plaintiff's most recent amended complaint—like his other pleadings—is difficult to follow.  Liberally construed, his principal grievance still appears to revolve around the alleged assault by the Pharr police officers that occurred in 2021. (*See* Docket No. 52-2, at 6-12.)  To be sure, he names numerous defendants, and many causes of actions.  In his complaint, he alleges violations to his rights pursuant to the following:

- 18 U.S.C. §§ 201, 241, 245, 1028, 1035, 1038, 1341, 1346, 1347, 1349, 1503, 1510, 1511, 1512, 1542, 1581, 1621, 1951, 1952, 1959, 1961 through 1968;

- 42 U.S.C. §§ 1983, 1985, 1988, and 14141;

- First, Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution; and

- Texas Penal Code §§ 22, 25.

(*See, e.g., id.* at 4, 23-26.)  In addition, he self-labels his various claims such as excessive force, "Monell Liability," "Canton Liability," intentional infliction of emotional distress, cruel and unusual punishment, racketeering violations, falsification of evidence, conspiracy against rights, and malicious prosecution. (*See, e.g., id.* at 19, 24-34, 38, 43-44, 46-54.)

However, the vast majority of the factual background in his most recent amended pleading focuses on the incident that occurred in 2021 with Pharr Police officers Montiel and Hernandez. (*See id.* at 2-12, 14-20, 36-55.)  Plaintiff alleges that the encounter began with Officer Montiel, who ultimately choked him three separate times, slammed his face into the ground, punched him, tased him, and pistol-whipped him. (*Id.* at 3-12.)  According to Plaintiff, Officer Hernandez then arrived at the scene, and instead of intervening to protect Plaintiff, he "assisted" and "condoned" Officer Montiel's actions "by placing the plaintiff on a (MRT) Maximum Restraint Technique." (*Id.* at 3.)  In fact, Plaintiff alleges that during the incident, the officers "placed [him] on a (MRT) Maximum Restrain Technique" four separate times. (*Id.* at 12.)  He further alleges that both Officers Montiel and Hernandez then fabricated the police report by asserting that Plaintiff was resisting arrest, intoxicated, and that he attempted to take Officer Montiel's service weapon.[2]  (*See id.* at 8, 12, 50-53.)

---

[2] Plaintiff also filed "Exhibits" to his amended complaint. (Docket No. 53.)  However, they do not pertain to Defendants Montiel, Hernandez, or the City of Pharr.  The exhibits . . . *continued on next page.*

As noted, Defendants Montiel, Hernandez, and the City of Pharr have filed dispositive motions to dismiss, based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 29, 31.) Although filed as separate motions, the factual background and many of the legal arguments asserted are consistent, if not indistinguishable. The motions both described the "nature" of the case as follows:

> Plaintiff's meandering First Amended Complaint vaguely, confusingly and in some cases, incoherently, alleges that [all of the defendants], violated various state statutes and constitutional rights when he was arrested on June 26, 2021. [ ] The Complaint further confusingly seems to reference or allege claims for past arrests or charges against Plaintiff from many years ago.

(Docket No. 29, at 1; Docket No 31, at 1.) Defendants address Plaintiff's enumerated "Counts," as well as what can reasonably be construed as a legal cause of action. (Docket No. 29, at 4-14; Docket No. 31, at 6-20.) Defendants conclude that "Plaintiff's pleading makes conclusory implications regarding Defendants' actions without either specifically pleading non-conclusory factual actions on the part of Defendants that adequately allege each constitutional violation." (Docket No. 29, at 2; Docket No. 31, at 2.) Defendants conclude that "both the factual and alleged legal assertions are insufficient for purposes of pleading requirements." [3] (Docket No. 29, at 2; Docket No. 31, at 2.)

---

reference previous Defendants Cameron County and Wells Fargo Bank. (*See* Docket Nos. 53, 88, 90.)

[3] To be clear, Defendants' motions to dismiss (Docket Nos. 29, 31) were directed at Plaintiff's amended complaint (Docket No. 27). However, Plaintiff has filed several amended complaints, and as the undersigned explained in an earlier order, Plaintiff's most recent amended pleadings (Docket Nos. 34, 52-2), "appear—in all practical respects—to be identical pleadings." (Docket No. 80, at 6.)

There have been some back-and-forth filings from the parties, in the way of responses, opposition, and replies. [4] (*See* Docket Nos. 35, 37, 39.)  In his response, "[t]he plaintiff admits that the complaint is [a] complex civil racketeering conspiracy to violate [his] civil rights." (Docket No. 35, at 2; Docket No. 39, at 4.)  However, in his first response, Plaintiff neglects to specifically address how his allegations against Defendants Montiel, Hernandez, and the City of Pharr, meet the threshold pleadings requirements of Rule 12 of the Civil Rules of Civil Procedure.  Rather, he delves deeper and deeper into what he describes as a "racketeering conspiracy" against him.  (*See generally* Docket No. 35.)  In fact, both of his substantive responses to the dispositive motions are consistent, if not identical in most respects.  (*Compare* Docket No. 35, *with* Docket No. 39.)

Defendants filed a reply to Plaintiff, again arguing that "Plaintiff's meandering Response is nonsensical, confusing and littered with irrelevant legal cites, factual assertions and essentially legalese gibberish."  (Docket No. 37, at 1.)  Defendants also address Plaintiff's enumerated "Counts," mostly reiterating arguments made in their previous filings.  (*See id.* at 2-6.)

On November 8, 2024, the undersigned held a hearing to address the pending motions in this case, including Defendants Montiel, Hernandez, and the City of Pharr's motions to dismiss. [5] Defendants urged the arguments in their motions to dismiss.  To begin with, Defendant City of Pharr argued that even though his claims are hard to decipher completely, Plaintiff's claims appear to revolve around his arrest on June 26, 2021, by Pharr Police Officers Montiel and Hernandez.  However, Plaintiff does not adequately plead a policy, practice, or custom, as is

---

[4] To be sure, Plaintiff has filed numerous pleadings and other documents in this case. (*See, e.g.*, Docket Nos. 42, 49, 63, 67, 76, 77, 84.)  The pleadings most relevant to the pending dispositive motions are referenced above.

[5] This hearing has not been transcribed.  However, in preparing this report, the undersigned listened to the audio recording of the hearing.

required for claims based on the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Nor has he pled a pattern of previous incidents that would support his claims against the City of Pharr.

Plaintiff argued that there is a pattern of previous incidents, which include his arrests from 2013 and 2017. However, other than stating that he was "beat up" during his arrest in 2017, Plaintiff did not further elaborate on these previous incidents. Defendant City of Pharr reiterated that this is inadequate to meet the relevant threshold as to the *Monell* claim.

Next, the City of Pharr argued that Plaintiff's claims based on violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, are legally invalid for various reasons. In addition, the City of Pharr asserted that it is immune from Plaintiff's state law and intentional tort claims. Plaintiff was unable to articulate a legal response to these points.

As to Officers Montiel and Hernandez, Defendants argue that the pleadings are too generic as they do not articulate with specificity what each officer did that constituted excessive force. To their credit, Defendants admit that this is a closer call, compared to Plaintiff's *Monell* claims. Plaintiff argued that what he pled as to each officer should be sufficient. As to his state law claims against the individual officers, Defendants argue that because Plaintiff has also named the City of Pharr as a defendant, he may not also allege those claims against the individual officers. Finally, Defendants argue that Plaintiff lacks standing as to most of his other claims. Again, Plaintiff did not have a legal response to that argument.

Given the fact that the basis and catalyst to this lawsuit was Plaintiff's arrest by Pharr Police officers Montiel and Hernandez, and taking into account the totality of the pleadings, the two claims that appear to be driving this lawsuit are the alleged excessive force claims against Defendants Montiel and Hernandez, and the "*Monell*" claim against the City of Pharr.

Defendants Montiel, Hernandez, and the City of Pharr's motions to dismiss have been fully briefed and argued. The motions will be considered in the context of the standard that applies under Rule 12(b) of the Federal Rules of Civil Procedure.

## II. ANALYSIS

### A.    Motion to Dismiss Standard

In moving to dismiss, Defendants invoke Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 29, 31.) A Rule 12(b)(6) motion to dismiss objects that a complaint fails "to state a claim upon which relief can be granted," and such a motion may be made in any pleading, by motion for judgment on the pleadings, or at trial on the merits. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) (citing FED. R. CIV. P. 12(h)(2); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Rule 12(b)(6) must be applied in light of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."

In considering a motion to dismiss, the court construes "facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In the context of a Rule 12(b)(6) motion to dismiss, pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000).

As the Supreme Court has explained, while a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted). In other words, the allegations must be sufficient to move the claim "across the line from conceivable to plausible." *Id.* at 570. Dismissal is appropriate if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citation omitted)).

It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Hughes v. Rowe,* 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of such a [pro se prisoner] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers....'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). While courts liberally construe the pleadings of *pro se* litigants, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981) (citing *Faretta v. California,* 422 U.S. 806, 834 n.46 (1975)). Regardless of whether a plaintiff is proceeding *pro se* or is represented by counsel, to avoid dismissal pleadings must show specific, well-pleaded facts, not mere conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

Here, the claims that Plaintiff asserts against Defendants Montiel, Hernandez, and the City of Pharr, in his amended complaint will be considered in light of the Rule 12(b)(6) standard.

**B.    Officers Montiel and Hernandez**

As noted, in his amended complaint, Plaintiff names numerous defendants and many causes of actions. Specifically, he alleges violations to his rights pursuant to the following:

- 18 U.S.C. §§ 201, 241, 245, 1028, 1035, 1038, 1341, 1346, 1347, 1349, 1503, 1510, 1511, 1512, 1542, 1581, 1621, 1951, 1952, 1959, 1961 through 1968;

- 42 U.S.C. §§ 1983, 1985, 1988, and 14141;

- First, Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution; and

- Texas Penal Code §§ 22, 25.

(Docket No. 52-2, at 4, 23-26.) In addition, he self-labels his various claims such as excessive force, "Monell Liability," "Canton Liability," intentional infliction of emotional distress, cruel and unusual punishment, racketeering violations, falsification of evidence, conspiracy against rights, and malicious prosecution. (*See, e.g., id.* at 19, 34, 38, 43-44, 46-54.) However, the majority of his pleadings focus on, and are consumed by, the incident that occurred in 2021 with Pharr Police officers Montiel and Hernandez. (*See id.* at 2-12, 14-20, 36-55.)

The Fourth Amendment guarantees individuals the right to be free from excessive force by law enforcement. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). The Supreme Court has held that "all claims that a law enforcement officer has used excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989).

"To state a claim for excessive force, [Plaintiff's] proposed complaint must allege '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the

need; and the excessiveness of which was (3) objectively unreasonable.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001)). "The second and third elements collapse into a single objective-reasonableness inquiry," which is guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation omitted). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396)). Only after first addressing the excessive force allegations, should a court address the defense of qualified immunity. *Pena*, 879 F.3d at 618.

Here, Plaintiff "easily satisfies" the three prongs of the excessive force analysis. *See id.* To begin with, Plaintiff claims that as a result of his arrest he "sustained scars and permanent injuries to both his knees, hands, shoulders and neck and C-spine and body." (Docket No. 1, at 5; Docket No. 11-1, at 5.) In fact, Plaintiff continues to allege that he "suffered injuries, experienced pain and suffering, and ultimately, he has injuries to his hands, fingers, knees, shoulders, C-spine and head to the right side of his skull." (Docket No. 52-2, at 40, 43-45, 48-49, 51-52.)

Perhaps more importantly, Plaintiff alleges that his injuries were the direct result of Officers Montiel and Hernandez punching him, pistol whipping him, and choking him. (*See* Docket No. 52-2, at 42 (Officers Montiel and Hernandez "choking, pistol whipping and kneeling on [his] neck.").) Although the majority of Plaintiff's pleadings allege that Officer Montiel was

the primary officer that used excessive force, Plaintiff also alleges that Officer Hernandez's direct actions constituted excessive force.[6] (*See* Docket No. 52-2, at 3-4, 8-12.)  In any event, courts have found similar allegations of excessive force adequate to proceed.  *See Staten v. Adams*, 939 F. Supp. 2d 715, 726-32 (S.D. Tex. Apr. 8, 2013); *see also Brown v. City of Alexandria*, No. 1:20-cv-541, 2022 WL 2873666, at *5 (W.D. La. July 21, 2022) (striking an unresisting claimant "on the head and body with his pistol . . . would be excessive and unreasonable.").

Finally, although the details in his pleadings leave much to be desired, Plaintiff has alleged that the force used against him was unreasonable under the circumstances.  Specifically, he alleges that much of the alleged excessive force was directed at him while he was on the ground, subdued, with his back to the officers.  (*See* Docket No. 52-2, at 3-12.)  Stated another way, Plaintiff alleges that he was not an active threat.  "Thus, [Plaintiff] has alleged injuries, resulting directly and solely from force that was excessive to the need and objectively unreasonable under the circumstances."  *See Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

The Court next considers the second prong of the qualified immunity analysis.  That is, whether Defendants Montiel and Hernandez's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.  *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022).  As the Court in *Brown* explained:

---

[6] Specifically, Plaintiff alleges that Officer Montiel was the first officer that he interacted with, and that Officer Hernandez arrived later to assist.  As noted, the majority of the allegations of excessive force are directed at Officer Montiel; however, Plaintiff alleges that Officer Hernandez "assisted" Officer Montiel "by placing the plaintiff on a "(MRT) Maximum Restraint Technique," "[p]ressed his knee on the plaintiff's neck," and was "choking, pistol whipping and kneeling on [Plaintiff's] neck." (Docket No. 52-2, at 3, 12, 42.)  Such allegations against Officer Hernandez are sufficient at this stage in the litigation to defeat Defendant's motion to dismiss.

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-part analysis when determining whether an official is entitled to qualified immunity. First, the plaintiff must establish whether the defendant violated a constitutional right. *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). Second, the plaintiff must also show whether the constitutional right was "clearly established" at the time of the challenged conduct, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* Whether a right is clearly established depends on whether "the contours of a right are sufficiently clear" so that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). When conducting this analysis, courts look to see whether it is "beyond debate" that existing legal precedent establishes the illegality of the conduct. *Id.* The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court. *See, Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

*Brown*, 2022 WL 2873666, at *2.

Here, Plaintiff alleges that both Officers Montiel and Hernandez assaulted him while he was subdued on the ground, laying prone on his stomach.  As noted above, it is clearly established law that striking, pistol whipping or choking a suspect who is not actively resisting constitutes an excessive use of force. *See Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008); *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012) (holding it was objectively unreasonable for an officer to tase and strike the plaintiff arrestee with a nightstick without resorting to other less violent means when the arrestee's behavior could not be considered active resistance); *Staten*, 939 F. Supp. 2d 715.  Under Plaintiff's version of the facts, a reasonable officer would know that striking, pistol whipping, and/or choking an unresisting suspect is in violation of clearly established law. *See Newman*, 703 F.3d at 764.

Accordingly, Defendants Montiel and Hernandez are not entitled to qualified immunity and their motion to dismiss Plaintiff's excessive force claims under § 1983 should be denied.

## C.    The City of Pharr

As noted, in considering Plaintiff's allegations as a whole, his primary claim against Defendant City of Pharr appear to be based on "Monell Liability." (Docket No. 52-2, at 34-37.) Not surprisingly, Defendant dedicates most of its motion to dismiss to the alleged "*Monell*" claims. (Docket No. 31, at 4-10.) However, Defendant City of Pharr argues that all of the claims asserted "do not properly allege a claim for which relief can be granted against the City pursuant to the *Monell* standard." (*Id.* at 6.) In fact, Defendant argues that "Plaintiff does not even come close to meeting this pleading standard"; as such, the "claims against the City should be dismissed." (*Id.* at 10.) Defendant City of Pharr is correct.

"In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 solely because its employee committed a constitutional tort." 436 U.S. 658, 691 (1978)." *Brown*, 2022 WL 2873666, at *6. The court in *Brown* continued,

> Rather, to hold a municipality liable under § 1983, the plaintiff must identify (i) an official policy (ii) promulgated by the municipal policymaker (iii) that was the 'moving force' behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). To establish the "moving force" requirement, a plaintiff must show that the municipality's policy or custom that caused the alleged harm was either unconstitutional or "promulgated with deliberate indifference." *Id.*

> The existence of an official policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). In the absence of an actual policy, a plaintiff can point to "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a municipal policy." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). To establish the existence of a custom or unofficial policy, a plaintiff must adduce evidence that the unconstitutional conduct occurred in cases other than his own, or in the rare case, that a final policymaker took a single unconstitutional action. *Id.* This "single incident exception," however, is extremely narrow and gives rise to municipal

14

> liability only if the municipal actor is a final policymaker. *Bolton v. City of
> Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d
> 348, 352 (5th Cir. 2005)). As such, a plaintiff's evidence must be sufficient to the
> inference that the municipality knew about and accepted a widespread course of
> unconstitutional conduct. *Peterson*, 588 F.3d at 851 n.4.

*Brown*, 2022 WL 2873666, at *6. In addition, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original). Local governments "are not vicariously liable under § 1983 for their employees' actions." *Id.*; *see also Monell*, 436 U.S. at 691-94 (Neither respondeat superior nor vicarious liability can be the basis for liability under § 1983.).

To begin with, Plaintiff's attempt to establish an "official policy" that was the driving force behind the City of Pharr's alleged violation of his constitutional rights falls flat. Specifically, he baldly alleges that Defendant City of Pharr's "written policies authorized the use of deadly 'neck restraint' in non-deadly circumstances." (Docket No. 52-2, at 16.) He continues to identify the "deadly neck restraint" as "the prohibited chokehold (MRT) Maximum Restraint Technique." (*Id.*) In addition, he repeatedly refers to "written policies" that Defendant's Montiel and Hernandez were following, yet he fails to provide those policies, and perhaps more importantly, he fails to explain why he believes "official policies" even exist. (*See* Docket No. 52-2, at 34-38.) Upon review of Plaintiff's allegations in his amended pleading, it becomes clear that he claims are based solely on his 2021 arrest, and alleged assault by Officers Montiel and Hernandez.

However, the officers' actions—on their own—do not confirm the existence of any purported policies. Not surprisingly, Plaintiff's pleadings, including the attachments, do not include the policy he claims the City of Pharr police officers were following. (*See, e.g.*, Docket Nos. 27, 34, 52, 53.) Here, Plaintiff has failed to provide evidence of an actual policy,

regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Brown*, 2022 WL 2873666, at \*6 (citing *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)).  Furthermore, such omission does not provide fair notice to Defendants. *See Iqbal,* 556 U.S. at 679; *Twombly*, 550 U.S. at 555-56 & n.3.

Next, Plaintiff argues that Defendant City of Pharr has shown a pattern or practice of excessive force.  To establish a pattern requires similarity and specificity; that is, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson*, 588 F.3d at 851 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

In support of this claim, Plaintiff explained at the hearing that the pattern is supported by his what transpired during his previous arrests in 2013 and 2017.  In his amended complaint, Plaintiff identifies the following interactions with the police:

- 2014 - Plaintiff was "illegally and maliciously prosecuted" in 2014 by the Laguna Vista Police in Cameron County;

- 2016 – there was "police misconduct" on 5/6/2016 case # 2016-00430" involving "South Texas College cadets";

- 2017 – At the hearing, Plaintiff said that he was "beat up" up by Pharr Police officers during his arrest in 2017, and his pleading asserts that "the prohibited chokehold (MRT) Maximum Restraint Technique" was used against him; and

- 2024 – Plaintiff asserts that "former Chief of Police Andrew Harvey was assaulted by Officer Montiel".[7]

(Docket No. 52-2, at 13, 16, 20.)  In addition, in his amended complaint, he asserts the following:

> The overt acts that have the same victims or pattern of practice or method of commission or pattern of racketeering on case # 2017-33215, and CR-17-09707-H (Malicious Prosecution), other Overt Act case # 2003-CCR-2665-A, Case #98989, (Case #98-CR-377-A the 2005 – Protection Racket relating to Drug Traffickers Sanchez-Vasquez), Case #2013-00033157 (Obstruction), Case # 2013-CR-10925-H (Doctor's Negligence), Case # 2014-CCR-3318-A (Malicious Prosecutions), 2021-CR-21-10272-H, 2021 (Malicious Prosecution), and CR-0772-23-H (Malicious Prosecution).

(*Id.* at 11 (some grammatical errors corrected).)

However, here, like much of his amended pleadings, Plaintiff takes a shotgun approach. He provides labels and conclusions; however, he fails to provide adequate details or explanation. *See Bell Atl. Corp.*, 550 U.S. at 555 (His allegations as to this defendant consist of nothing more than "labels and conclusions," which do not "raise a right to relief above the speculative level."); *Iqbal,* 556 U.S. at 679.  Although when pressed he asserts that his arrests in 2013 and 2017 are the two previous incidents that show a pattern or practice of excessive force, there is little to no detail to substantiate his claims. *See Sanchez v. Gomez*, 283 F. Supp. 3d 524, 536 (W.D. Tex. 2017) (citing *Peterson*, 588 F.3d at 851) (the Court found that "twenty-seven alleged instances" was insufficient because they lacked any "context")).  Stated another way, Plaintiff's factual allegations regarding the previous incidents fail to "raise a right to relief above the speculative

---

[7] As Defendants made clear at the hearing, the incident involving former Police Chief Harvey cannot be used to show a pattern or practice of behavior, because it occurred after Plaintiff's arrest that are the subject of his allegations. *Cf. Sanchez v. Gomez*, 283 F. Supp. 3d 524, 544 (W.D. Tex. 2017) (examples occurring "after the incident in question" are not typically used to show a pattern or practice, but they may be used to show existence of a policy).

level." *Twombly*, 550 U.S. at 555-56.  His sparse allegations against the City of Pharr are insufficient to move his claim "across the line from conceivable to plausible." *Id.* at 570.

Here, Plaintiff has failed to meet his burden to "show specific, well-pleaded facts, not mere conclusory allegations." *Guidry*, 954 F.2d at 281.  Even when his amended complaint is liberally construed in his favor, Plaintiff's allegations are clearly insufficient to support his claims of *Monell* liability against Defendant City of Pharr.  As such, the dismissal of Plaintiff's claims against Defendant City of Pharr are appropriate under the circumstances. *Leal*, 731 F.3d at 410 ("Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'").

### D.    Other Claims

As noted, Plaintiff makes numerous claims in his amended complaint, and in doing so, cites to various laws and statutes that he believes have been violated.  Here again, the basis of these additional claims appears to arise from his arrest by Officers Montiel and Hernandez.  As described by the defendants, Plaintiff's pleadings are vague, confusing, incoherent, meandering, and/or conclusory.  (*See* Docket Nos. 29, at 1-3; Docket No. 31, at 1-3; Docket No. 47-1, at 1.) To be sure, many of his claims are described in a cursory and/or conclusory manner (sometimes in one sentence), followed by a laundry list of statutory citations. (Docket No. 52-2, at 25-34.) Although he is proceeding pro se, Plaintiff's approach—in many respects—has not been helpful and has not aided the court in parsing through his many claims.  Quite the contrary.

In any event, and in an abundance of caution, Plaintiff's other claims will be briefly addressed below.

### 1)   Failure to Train/Discipline

Plaintiff alleges in "Count 6" that Defendant City of Pharr violated his constitutional rights based on "Canton Liability." (Docket No. 52-2, at 38-40.)  Plaintiff explains that the "City of Pharr failed to properly train or modify its training to defendant Officers and its other officers including but not limited to, matters related to the reasonable and appropriate use of force during such arrest, and intervention in the excessive force use by fellow officers." (*Id.* at 38.)  He also asserts that the "City of Pharr fails to terminate or discipline officers who demonstrate a pattern of misconduct." (*Id.* at 18.)  Defendants argues that "Plaintiff fails to plead sufficient facts" to support these claims." (Docket No. 31, at 8-10.)

The standard for establishing *Monell* liability for failure to train is the same standard for establishing municipal liability in general.  *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 544 (W.D. Tex. 2017) (citing *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010)).  "An inadequate training program or a failure to train, once shown to be an official policy or custom of which a municipality has knowledge, may serve as the basis for § 1983 liability only where inadequate training amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Malone v. City of Fort Worth, Texas*, 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018) (citing *City of Canton, v. Harris*, 489 U.S. 378, 388 (1989)).  "It follows that to hold a municipality liable under § 1983 based on a policy of inadequate training, a plaintiff must demonstrate that '(1) [the municipality's] training policy was inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation].'" *Malone*, 297 F. Supp. 3d at 655 (citing *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders–Burns*, 594 F.3d at 381), *abrogated in part on other grounds*, *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473–76 (2015)).

"Plausibly to plead a *Monell* claim in the context of a failure-to-discipline claim, plaintiffs must show (1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (citing *Armstrong, v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023)).   "So, to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Verastique*, 106 F.4th at 432 (citing *Johnson, v. Harris County*, 83 F.4th 941, 946–47 (5th Cir. 2023)).   Plaintiff utterly fails to make that requisite showing.

At the outset, the undersigned notes that Plaintiff's allegations relating to failure to train and failure to discipline are, to put it lightly, sparse.   To make matters worse, what is alleged is cursory and fatally conclusory.   Plaintiff does not make a good-faith attempt to establish any of the elements of these claims.

Here, Plaintiff has failed to meet his burden to "show specific, well-pleaded facts, not mere conclusory allegations." *Guidry*, 954 F.2d at 281.   Stated another way, Plaintiff's factual allegations fail to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.   His sparse allegations against the City of Pharr are insufficient to move his claim "across the line from conceivable to plausible."[8]   *Id.* at 570.   As such, the dismissal of Plaintiff's claims against Defendant Cameron County are appropriate under the circumstances. *Leal*, 731 F.3d at 410 ("Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'").

---

[8] Still, a plaintiff cannot state a failure-to-train claim by making a "conclusory allegation that it is 'apparent from the facts of [the] case' that [ ] excessive force training ... was insufficient." *Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 614 (W.D. Tex. 2023) (quoting *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015)).

### 2)    Intentional Infliction of Emotional Distress

Plaintiff alleges in "Count #8" that Defendants Montiel and Hernandez "acted intentionally by subjecting [him] to police brutality conduct that was extreme and dangerous." (Docket No. 52-2, at 43.)  He further asserts that the "defendant's actions were intentional[ ] and reckless," which amount to the "intentional infliction of emotional distress."  (*Id.* at 43-44.) Defendants Montiel, Hernandez, and the City of Pharr argue that this claim should be dismissed as a matter of law.  (Docket No. 29, at 7-8; Docket No. 31, at 12-13.)

Here, the Fifth Circuit has explained that the Texas Tort Claims Act "waives the sovereign immunity enjoyed by Texas municipalities only 'to the extent of liability created by [the statute].'"  *Pena v. City of Rio Grande City*, 879 F.3d 613, 619, 625 (5th Cir. 2018) (quoting Tex. Civ. Prac. & Rem. Code § 101.025(a)).  "The TTCA limits its waiver of liability on personal injury claims to negligence involving 'the operation or use of a motor-driven vehicle or motor-driven equipment' to the extent the employee would be personally liable."  *Pena*, 879 F.3d at 625 (quoting § 101.021).  "Intentional torts are explicitly excepted from the waiver." *Pena*, 879 F.3d at 625 (citing § 101.057).

Here, Plaintiff does not address sovereign or qualified immunity.  However, he explicitly asserts that Defendants Montiel and Hernandez acted intentionally, rather than negligently.  The Fifth Circuit "has already decided, in accordance with the holdings of the Texas Supreme Court, that such a theory is not cognizable under the TTCA: 'Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not.'"  *Pena*, 879 F.3d at 625 (citing *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017) (string citation omitted)).  "The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim."  *Pena*, 879 F.3d at

625 (citing *Quinn*, 863 F.3d at 364).  In addition, Plaintiff's claims against Officers Montiel and Hernandez are statutorily barred because Plaintiff's detention was an act within the scope of their employment.  *Lupis v. City of Texas City, Tex.*, No. 3:22-cv-101, 2023 WL 4864850, at *5 (S.D. Tex. Mar. 29, 2023 (citing *Smith v. Heap*, 31 F.4th 905, 914 (5th Cir. 2022) (applying the TTCA and holding it barred an intentional infliction-of-emotional-distress claim against a constable where the claim was "linked to conduct within the scope of [the constable's] employ")).

Plaintiff has failed to establish that either sovereign immunity or qualified immunity has been waived.  As such, Plaintiff's claim of intentional infliction of emotional distress should be dismissed.

### 3)   Eighth Amendment

Plaintiff alleges in "Count # 9" that Defendants Montiel and Hernandez "are liable for the cruel and unusual punishment inflicted [on him which is] protected by the 8th amendment of the United States Constitution."   (Docket No. 52-2, at 45.)   Defendants argue that this claim conclusively fails because Plaintiff was not a "convicted prisoner" at the time of the incident, and because he fails to "plead one single fact in support of an Eighth Amendment claim."  (Docket No. 29, at 8; Docket No. 31, at 13.)

"The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees."  *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).  "During the time in question, Plaintiff was not a convicted prisoner; therefore, Plaintiff's Eighth Amendment claims against [the] Defendants fail because the Eighth Amendment does not apply to the circumstances of an arrestee. *Burkette v. Travis*, No. 18-cv-996, 2024 WL 1253920, at *13 (M.D. La. Feb. 23, 2024) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

Here, there is no dispute that at the time of the incident, Plaintiff was not a "convicted prisoner"; rather, he was an arrestee. As such, Plaintiff's claims based on the Eighth Amendment's prohibition against cruel and unusual punishment should be rejected.

### 4)    Racketeering (RICO) Violations

As noted, Plaintiff identifies Defendants City of Pharr, Officer Montiel, and Officer Hernandez, as members of a "criminal organization" he refers to as "The Enterprise." (Docket No. 52-2, at 21.) He alleges that Defendants, with "others known or unknown," engaged "in acts of violence, including extortion and robbery 'under color of official right,' honest service fraud, oppression, assault, police misconduct, conflict of interest, favoritism self-dealing, [and] concealment which operated principally in the United States Southern District of Texas." (*Id.* (some grammatical errors corrected).) He attempts to explain this claim in a cursory manner with few details. (*See id.* at 24-34.)

"The Racketeer Influenced and Corrupt Organizations Act ("RICO") creates a civil action and remedy for '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Conrad v. Krc*, No. 6:15-cv-77, 2016 WL 5853738, at *6 (E.D. Tex. June 17, 2016) (quoting 18 U.S.C. § 1964(c)). "Establishing a RICO claim requires (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Id.* (citing 18 U.S.C. §§ 1962(c) and (d)). "To establish RICO liability, a plaintiff must show that there is a pattern of racketeering activity, as opposed to just a single, otherwise lawful transaction." *Conrad*, 2016 WL 5853738, at *6 (citing *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996)). "A 'pattern of racketeering' requires at least two acts of racketeering activity, ... the last of which occurred

within ten years ... after the commission of a prior act of racketeering activity.'" *Conrad*, 2016 WL 5853738, at *6 (quoting 18 U.S.C. § 1961(5)).

In this case, Plaintiff has not shown an injury to his business or property as required by 18 U.S.C. § 1964(c). Moreover, he has not identified or shown racketeering activity, much less a pattern of racketeering activity, or an enterprise. Although he labels a purported group of defendants as "The Enterprise," and further describes their alleged behavior as racketeering, such cursory allegations do not establish RICO violations such as necessary to defeat the dismissal of those claims at this stage.

"The term 'racketeering' as it is used in the RICO statute 'means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ... section[ ] 2314 ... (relating to interstate transportation of stolen property).'" *Conrad*, 2016 WL 5853738, at *6 (quoting 18 U.S.C. § 1961(1)). "To establish a civil RICO conspiracy, a plaintiff must show that: (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense." *Conrad*, 2016 WL 5853738, at *6 (citing *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012)). Plaintiff fails to establish either element.

In sum, Plaintiff has not established any of the elements of a civil RICO claim against Defendants Montiel or Hernandez. In addition, Plaintiff does not have a viable RICO claim against the City of Pharr because "[m]unicipalities ... cannot be sued under RICO." *Conrad*, 2016 WL 5853738, at *6 (quoting *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 544 (E.D. Tex. Jan. 7, 2004)). These claims should be summarily dismissed.

**5)**    **Texas Constitution Claims**

To be sure, in his second-amended complaint, Plaintiff cites to "Violations of Texas Constitution, article 1, sections 9, 13, and 19. (Docket No. 27, at 11, 13, 15.) However, Plaintiff did not include these violations in his most recent amended pleadings. (*See* Docket Nos. 34, 52-2.) Nevertheless, Defendants argue that Plaintiff's claims based on violations of the Texas Constitution are misplaced. Specifically, Defendant argues that Plaintiff alleges that the facts underlying this lawsuit establish violations to the Texas Constitution, article 1, sections 9, 13, and 19 are not properly brought here. (Docket No. 29, at 8-11; Docket No. 31, at 11-16.)

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). Claims and parties not re-alleged in the amended complaint are no longer before the court — the plaintiff has in effect dropped those claims and parties. *Gillespie v. Wells Fargo Home Mortg.*, No. 10-cv-240, 2012 WL 12877662, at *8 (W.D. Tex. May 11, 2012) (citing *King*, 31 F.3d at 346); *see also Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) ("Once the amended complaint was filed, however, it became the governing document in the case and any allegations and parties not brought forward fell by the wayside.").

To begin with, Plaintiff did not include claims based on alleged violations of the Texas Constitution in his most recent pleading. (*See* Docket Nos. 34, 52-2.) This suggests that he no longer wishes to assert them. Notwithstanding that, Defendants are correct that such claims would not be proper included in this lawsuit. "Texas recognizes no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of

Texas constitutional rights." *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 990 (S.D. Tex. 2012)

(citing *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149–50 (Tex. 1995), and *Hamilton v.*

*Pechacek,* 319 S.W.3d 801, 812 (Tex. App. 2010)).

To the extent these claims are arguably before the Court, the undersigned recommends

that they be dismissed.

### 6)    Case Fixing/Fabrication of Evidence

Next, Plaintiff alleges that Defendants City of Pharr, along with Officers Montiel and

Hernandez conspired against him by "falsifying evidence" and "to frame and fix" the criminal

case against him. (Docket No. 52-2, at 47-51.) Specifically, Plaintiff asserts that during his

2021 arrest by Officers Montiel and Hernandez he never "resisted" nor did he "attempt to take a

weapon from a police officer." (*Id.* at 48, 50.) Defendants argue that Plaintiff wholly fails to

establish "a claim brought pursuant to 42 U.S.C. § 1983 and 1985," and that these claims are

"vague and almost indecipherable." (Docket No. 29, at 11-14; Docket No. 31, at 16, 19-20.)

Here again, Defendants are correct.

"[M]anufacturing evidence is a clear violation of the Due Process Clause." *Castellano v.*

*Fragozo*, 352 F.3d 939, 955 (5th Cir. 2003) (overturned on other grounds).    However,

"[c]hallenges to an arrest or detention ordinarily arise under the Fourth Amendment." *See Welsh*

*v. Williams*, No. 5:22-cv-183, 2023 WL 11990749, at *14 (N.D. Tex. June 30, 2023) (citing

*Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017) (analyzing a claim for "unreasonable"

detention under the Fourth Amendment where plaintiff alleged he was detained "based solely on

false evidence, rather than supported by probable cause")).    "Nevertheless, [. . .] '[w]here police

intentionally fabricate evidence and successfully get someone falsely charged with a felony as

cover for their colleagues' actions, *and the Fourth Amendment is unavailing*, there may be a due

process violation.'"   *Welsh*, 2023 WL 11990749, at \*14 (quoting *Cole v. Carson*, 802 F.3d 752,

773 (5th Cir. 2015) (emphasis in original)).   The Court in *Welsh v. Williams* continued to

explain:

> To succeed on a fabrication-of-evidence claim under the Fourteenth Amendment,
> a plaintiff "must show (1) the officers fabricated evidence (2) for the purpose of
> falsely obtaining a charge and (3) that the evidence influenced the decision to
> charge." *See Cole v. Hunter*, 497 F. Supp. 3d 172, 190 (N.D. Tex. 2020). The
> plaintiff must, however, "make more than conclusory allegations." *Guillory v.
> Dalbour*, No. 2:15-cv-02452, 2016 WL 5415072, at \*5 (W.D. La. Sept. 27, 2016).
> Indeed, vague and non-specific allegations of wrongdoing are insufficient to
> support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir.
> 2005) (per curiam) (holding that vague and conclusory allegations provide an
> inadequate basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678
> (5th Cir. 2004) (per curiam) (same); *Lloyd v. Jones*, No. 9:18-CV-211, 2019 WL
> 4786874, at \*6 (E.D. Tex. Sept. 10, 2019) ("The Court does not accept as true
> 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' "
> (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir.
> 2010))). The plaintiff must instead provide "supporting factual detail" such as
> "how [the fabrication] was material or harmful to [the] case" and why he
> "believes it to be fabricated." *Armstrong v. Ashley*, 60 F.4th 262, 272 (5th Cir.
> 2023).

*Welsh*, 2023 WL 11990749, at \*14.

Here, the basis of Plaintiff's claims is his denial that he resisted arrest; specifically, he

also argues that he never reached for an officer's firearm during the altercation.   Essentially, he

argues that he is innocent of the charges.   To begin with, as this report makes clear, "the Fourth

Amendment is [not] unavailing" to Plaintiff here.   *See Welsh*, 2023 WL 11990749, at \*14

(quoting *Cole*, 802 F.3d at 773).   Specifically, the undersigned is recommending that Plaintiff's

claims of excessive force against Defendants Montiel and Hernandez continue forward at this

stage of the litigation.   *See Welsh*, 2023 WL 11990749, at \*14 (citing *Manuel*, 580 U.S. at 364).

As such, Plaintiff's claims purporting to proceed pursuant to the Fourteenth Amendment would

be misplaced here.

In addition, here again, Plaintiff's allegations against Defendants Montiel and Hernandez are cursory at best, if not entirely conclusory. *See Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an inadequate basis for § 1983 claims); *Richards*, 115 F. App'x at 678 (same). Furthermore, the basis of these charges is the alleged "excessive force" by the officers, which is subsumed by other claims. The Court should likewise reject these claims.[9]

### 7)    Conspiracy Against Rights

Plaintiff next alleges that Defendants City of Pharr, Montiel, and Hernandez conspired together to "interfere with [his] civil rights," in violation of 42 U.S.C. § 1985. (Docket No. 52-2, at 48-49.) Like many of his other allegations, the basis of this claim stems from this arrest by Officers Montiel and Hernandez. Defendants argue that this claim likewise fails against all of the defendants. (Docket No. 29, at 12-13; Docket No. 31, at 17-19.)

The Fifth Circuit has explained: "The relevant text of [42 U.S.C.] § 1985(3) criminalizes only conspiracies that involve depriving someone of "equal protection of the laws" or "equal privileges and immunities under the laws." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citing 42 U.S.C. § 1985(3)); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

---

[9] Closely related to his claims of "case fixing/fabrication of evidence," Plaintiff also asserts that he was a victim of "malicious prosecution." (Docket No. 52-2, at 50-54.) For various reasons, Defendants likewise argue that these claims should be rejected. (Docket No. 29, at 13-14; Docket No. 31, at 19-20.) The Fifth Circuit "has held that the federal Constitution does not include a "freestanding" right to be free from malicious prosecution. *Deville*, 567 F.3d at 169 (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)) (en banc). "Instead, it must be shown that the officials violated specific constitutional rights in connection with a 'malicious prosecution.'" *Deville*, 567 F.3d at 169. "For example, 'the initiation of criminal charges without probable cause may set in force events that run afoul of the ... Fourth Amendment if the accused is seized and arrested ... or other constitutionally secured rights if a case is further pursued.'" *Id.* (quoting *Castellano*, 352 F.3d at 953–54). "However, these 'are not claims for malicious prosecution.'" *Deville*, 567 F.3d at 169 (quoting *Castellano*, 352 F.3d at 954). Accordingly, Plaintiff's claim under § 1983 for "malicious prosecution" in respect to the 2021 arrest by Officers Montiel and Hernandez is not independently cognizable, and it should be dismissed.

"This kind of conspiracy requires some form of class-based discrimination." *Cantu*, 933 F.3d at 419 (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834–35 (1983)). Plaintiff's claim should be rejected.

## E.    Leave to Amend Pleadings

Although not filed as a separate motion, liberally construed Plaintiff has indicated that he would like leave to amend should the court identify any "deficiencies in [his] pleadings." (*See* Docket No. 68, at 5.) When a plaintiff's complaint fails to state a claim, a federal court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As the Fifth Circuit has observed: "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id.* Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 270 (5th Cir. 2010).

Here, the undersigned recommends that the District Court not grant Plaintiff leave to amend his claims further. To begin with, Plaintiff has already had several opportunities to amend his original complaint; and, in fact, has done so. (*See* Docket Nos. 1, 11, 27, 34, 52-2.) Despite these opportunities to amend his complaint and clarify his claims, Plaintiff has been unable to cure the defects in his pleadings as they pertain to Defendants. Second, and perhaps more significantly, it is apparent that any attempt to further amend his claims against the

defendants, as explained in this report, would be futile, given their spurious and cursory nature. Because Plaintiff is unable or unwilling to cure the deficiencies in his pleadings, it is unnecessary for the Court to allow any further amendments. *See Great Plains Trust Co.,* 313 F.3d at 329 (noting that it is unnecessary to provide a plaintiff with the opportunity to cure pleading deficiencies where "it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

## III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants Montiel and Hernandez's "Motion to Dismiss" (Docket No. 29) be **GRANTED** in part and **DENIED** in part, and that Defendant City of Pharr's Motion to Dismiss (Docket No. 31) be **GRANTED** in its entirety. **Specifically, the undersigned recommends that Plaintiff's claims of excessive force against Defendant's Montiel and Hernandez, in their individual capacity, should proceed in this lawsuit; however, it is recommended that all other claims asserted by Plaintiff be summarily dismissed from this civil action.**[10]

## NOTICE TO THE PARTIES

The Clerk shall send a copy of this Report and Recommendation to the parties, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

---

[10] To be clear, the undersigned does not take the recommendations here to dismiss Plaintiff's claims lightly. To the contrary, given Plaintiff's pro se status, the undersigned has given him the benefit of that status and held him to less stringent standards, where appropriate. *See Hughes v. Rowe,* 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of such a [pro se prisoner] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers....'").

Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on March 11, 2025.

_____
Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE