UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| EAZ CHAY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:23-CV-206 |
| | § | |
| JOSE MONTIEL, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## REPORT AND RECOMMENDATION

Plaintiff Eaz Chay, Jr., proceeding pro se, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Docket No. 1.) In his pleadings, Plaintiff has named numerous defendants and a plethora of causes of action, which—according to him—combine to establish a far-reaching conspiracy against him going back to 1998. (*See* Docket Nos. 1, 11, 27, 34, 52-2.) Although the conspiratorial nature of Plaintiff's allegations is far-reaching and touches many defendants, the catalyst to this lawsuit appears to be his arrest in 2021, by the City of Pharr Police Department officers Jose A. Montiel, and Edgar Hernandez. In addition, through the adjudication of several dispositive motions, the scope of this case has narrowed significantly. (*See* Docket Nos. 29, 31, 45, 47, 88, 90, 91, 93, 94, 96.) Specifically, as it stands, the only claims remaining in this lawsuit are Plaintiff's claims of excessive force—stemming from his 2021 arrest—against Defendants Montiel and Hernandez. All other claims have been dismissed.

Pending before the Court is "Defendants Jose Montiel and Edgar Hernandez's Amended Motion for Summary Judgment." (Docket No. 104.) In their motion, Defendants argue that the remaining claims in this lawsuit against them should be dismissed. Specifically, they argue that the "competent summary judgment evidence establishes no unconstitutional use of excessive

force," and they "are entitled to qualified immunity as to the excessive force claim against them." (*Id.* at 4.) In addition, Defendants argue that "Plaintiff has no evidence to the contrary." (*Id.*)

Plaintiff has filed a response in opposition to the motion for summary judgment. (Docket No. 110.) Finally, Defendants Montiel and Hernandez replied to Plaintiff's opposition. (Docket No. 111.)

After carefully considering the pleadings on file and the applicable law, the undersigned concludes that Defendants' motion for summary judgment should be granted. As discussed below, Plaintiff's claim that his civil rights were violated based on the use of excessive force during his arrest by Defendants Montiel and Hernandez is not supported by the evidence of record. To the contrary, the evidence conclusively shows that the force used by Defendants during Plaintiff's arrest was both reasonable under the circumstances, and proportional to the level of Plaintiff's resistance. In addition, because Plaintiff has failed to establish a constitutional violation, both Defendants Montiel and Hernandez are entitled to qualified immunity.

Accordingly, it is recommended that Defendants' motion for summary judgment be granted and that this action be dismissed.

## I. BACKGROUND

### A. Plaintiff's Amended Pleadings

On June 26, 2021, Pharr Police Officers Montiel and Hernandez arrested Plaintiff. During this arrest, Plaintiff resisted. According to him, Defendants response to his resistance elevated to the level of excessive force, was an assault, and violated his civil rights. (Docket No. 1.) Specifically, Plaintiff alleged that Defendants slammed him on the ground, choked him, and

pistol-whipped him.  (*Id.* at 4.)  As a result of the alleged assault, Plaintiff claims that he "sustained scars and permanent injuries to both his knees, hands, shoulders and neck and C-spine and body." (*Id.* at 5; *see also* Docket No. 52-2, at 40 (Plaintiff continues to allege that he "suffered injuries, experienced pain and suffering, and ultimately, he has injuries to his hands, fingers, knees, shoulders, C-spine and head to the right side of his skull.").)

As noted, Plaintiff filed this civil rights lawsuit on June 26, 2013, the basis of which was his arrest by Defendants Montiel and Hernandez, two years prior.  Plaintiff has attempted to amend his complaint several times, and through these attempts his allegations have continued to expand.[1]  (*See* Docket Nos. 11, 27, 34, 52-2.)  However, the vast majority of the factual background in his most recent amended pleading focuses on the incident that occurred in 2021 with Pharr Police officers Montiel and Hernandez.  (Docket No. 52-2, at 2-12, 14-20, 36-55.)

Plaintiff alleges that the encounter began with Officer Montiel, who ultimately choked him three separate times, slammed his face into the ground, punched him, tased him, and pistol-whipped him.  (*Id.* at 3-12.)  According to Plaintiff, Officer Hernandez then arrived at the scene, and instead of intervening to protect Plaintiff, he "assisted" and "condoned" Officer Montiel's actions "by placing the plaintiff on a (MRT) Maximum Restraint Technique." (*Id.* at 3.)  In fact, Plaintiff alleges that during the incident, the officers "placed [him] on a (MRT) Maximum Restrain Technique" four separate times.  (*Id.* at 12.)  He further alleges that both Officers Montiel and Hernandez then fabricated the police report by asserting that Plaintiff was resisting

---

[1] For example, in his latest pleading, he describes a far-reaching conspiracy which he calls "The Enterprise."  (Docket No. 52-2, at 21.)  The undersigned previously summarized Plaintiff's allegations as they relate to "The Enterprise," as well as the other defendants who have been dismissed.  (*See* Docket No. 88, at 2-5; Docket No. 90, at 2-7; Docket No. 93, at 3-4.)

arrest, intoxicated, and that he attempted to take Officer Montiel's service weapon.[2] (*See id.* at 8, 12, 50-53.)

Based on Plaintiff's amended pleadings, Defendants Montiel and Hernandez (among the other named defendants) filed dispositive motions to dismiss, based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] (Docket Nos. 29, 31.) Although filed as separate motions, the factual background and many of the legal arguments asserted are consistent, if not indistinguishable. On November 8, 2024, after the parties briefed the issues, the undersigned held a hearing to address the pending dispositive motions. Later, the undersigned recommended **"that Plaintiff's claims of excessive force against Defendant's Montiel and Hernandez, in their individual capacity, should proceed in this lawsuit; however, it is recommended that all other claims asserted by Plaintiff be summarily dismissed from this civil action."** (Docket No. 93, at 30 (emphasis in original).) The District Court agreed and adopted these recommendations. (Docket No. 96.) As noted, this significantly reduced the scope of the issues that remained pending in this case.

**B.    Summary Judgment Evidence**

Although both parties have filed various exhibits in support of their positions as it pertains to the pending motion for summary judgment, suffice it to say, that Plaintiff's excessive force claim against Defendant's Montiel and Hernandez either stands, or falls, on the video recording of Plaintiff's arrest. To that end, both parties have filed electronic recordings of the

---

[2] Plaintiff also filed "Exhibits" to his amended complaint; however, they do not pertain to Defendants Montiel or Hernandez. The exhibits reference previous Defendants Cameron County and Wells Fargo Bank. (*See* Docket Nos. 53, 88, 90.)

[3] To be clear, Defendants' motions to dismiss (Docket Nos. 29, 31) were directed at Plaintiff's amended complaint (Docket No. 27). However, as the undersigned has explained, Plaintiff's most recent amended pleadings (Docket Nos. 34, 52-2), "appear—in all practical respects—to be identical pleadings." (Docket No. 80, at 6.)

video footage of Plaintiff's arrest. (*See* unnumbered Docket Entry "Staff Notes" dated May 9, 2025, and August 8, 2025.) In addition, at the motion hearing dated May 30, 2025, Plaintiff argued that his claims of excessive force as to both Defendants Montiel and Hernandez are fully supported by the video footage of his arrest. (*See* unnumbered "Minute Entry" dated May 30, 2025.)

Not surprisingly, the parties characterize the video footage of Plaintiff's arrest very differently. The following is not meant to be an exhaustive summary of how the parties' characterizations differ, but rather to highlight each parties' perspective on the video evidence of Plaintiff's arrest. Having said that, in their motion for summary judgment, Defendant's Montiel and Hernandez describe the following:

- Officer Montiel "observed a gray 4-door vehicle driving reckless in a parking lot doing 'donuts'";

- Officer Montiel approached the driver (Plaintiff) and noticed that he was exhibiting many signs suggesting he was under the influence of alcohol;

- While speaking to him, Plaintiff repeatedly attempted to reach into his pocket and/or behind his back;

- "In response to these movements by Plaintiff, Officer Montiel attempted to grab Plaintiff and detain him for safety purposes.";

- Plaintiff resisted by pulling away, walking away, and then "flailing his arms around in an attempt to get away";

- "Officer Montiel then bear-hugged Plaintiff and took him down to the ground";

- Plaintiff then "shook off Officer Montiel and began running away";

- Officer Montiel caught Plaintiff, "pushed him down to the ground in an attempt to gain control over him";

- Plaintiff continued resisting by pulling away and pushing Officer Montiel away, and refusing to put his hands behind his back to be handcuffed;

- "Plaintiff then attempted to sit up and reach back in what Officer Montiel perceived as the Plaintiff reaching for his police issued handgun with his left hand several times.";

- "Officer Montiel feared for his life and used two stunning hand-impacts to Plaintiff's face.";

- Plaintiff continued resisting and again tried to reach for Officer Montiel's handgun;

- Plaintiff continued resisting being placed in handcuffs;

- Officer Hernandez arrived and even though Plaintiff continued to resist, both officers were able to place Plaintiff in handcuffs.

(Docket No. 104, at 2-4.)  In contrast, Plaintiff describes the video footage of his arrest as showing the following:

- The Defendants assaulted, pistol whipped, and choked him;

- Plaintiff "went politely to talk" to Defendant Montiel but the officer "just attacked" him and used "excessive deadly force";

- Defendant Montiel illegally pushed and pulled Plaintiff to the floor;

- Defendant Montiel illegally choked Plaintiff for the first time;

- Defendant Montiel "slams [Plaintiff's] face to the ground";

6

- Defendant Montiel punches Plaintiff and "took his gun and impacted [Plaintiff] on his right side of his skull";

- "Plaintiff holds his right hand because the Defendant tells the Plaintiff about a gun";

- Defendant Montiel illegally choked Plaintiff for the second time;

- Plaintiff tries to deescalate the situation while Defendant Montiel continues "to tease and slap" him;

- Right before Defendant Hernandez arrives on the scene, Defendant Montiel chokes Plaintiff for the third time;

- Defendant Hernandez put his knee on the back of Plaintiff's neck;

- Defendant Montiel pulled Plaintiff's hand towards his gun;

- Plaintiff claims that Defendant Montiel assaulted him and that Defendant Hernandez fixed the case.

(Docket No. 110, at 8-10.)[4] The undersigned has reviewed the bodycam footage of both Defendants Montiel and Hernandez—as well as the other footage from Plaintiff's arrest—that both parties submitted. Briefly, the undersigned notes that Officer Montiel's bodycam footage unequivocally shows the following:

- Plaintiff actively resists arrest from the beginning of the recording;

- Plaintiff tries to get away from Officer Montiel twice (at 0:13 sec and 0:50 sec);

- Officer Montiel warns Plaintiff to stop reaching for his "gun" and his "stuff" (at 2:16 min);

---

[4] The pages of Plaintiff's response in opposition to the dispositive motion were docketed out of order. (*See* Docket No. 110.) Accordingly, when citing to it, the undersigned will reference the page numbers that are located at the bottom of each page.

- Officer Montiel warns Plaintiff to either cooperate or he will "step it up" (at 2:54 min);

- Officer Montiel then uses an open hand strike to Plaintiff's face (at 3:07 min);

- Officer Hernandez arrives on the scene (at 3:39 min);

- Plaintiff is fully handcuffed (at 5:45 min);

- Officer Montiel explains how Plaintiff was doing donuts in the parking lot (at 7:23 min);

- Officer Montiel explains how Plaintiff was "reaching" for his gun or his stuff (at 6:19 min, 7:34 min, 7:47 min, 8:48 min, 9:30 min, 12:00 min);

- Officer Montiel explains how Plaintiff tried to get away from him (at 9:03 min); and

- Officer Montiel explains how there was a strong odor of alcohol emanating from Plaintiff when he arrived (at 9:20 min).

In addition, the undersigned notes that Officer Hernandez's bodycam footage unequivocally shows the following: 1) When Officer Hernandez arrives on the scene, Officer Montiel's left arm is around Plaintiff's neck for approximately eight (8) seconds; and 2) Plaintiff was not fully handcuffed until 2:08 minutes after Officer Hernandez arrived.

As noted, the parties have filed other exhibits in support (or in opposition) to the motion for summary judgment. Notably, Defendants included with their motion arrest records, declarations from both Defendant Montiel and Hernandez, Pharr Police Department's use of force policy, training records, and Plaintiff's interrogatory responses. (*See* Docket Nos. 104-2 through 104-9.) Similarly, Plaintiff filed various Pharr Police Department records, medical

records of his injuries, and Hidalgo County court records.[5] (*See* Docket Nos. 110-1 through 110-3.)

**C.      Defendants' Motion for Summary Judgment and Plaintiff's Response**

In their motion for summary judgment, Defendants argue that the remaining claims in this lawsuit against them should be dismissed.  Specifically, they argue that the "competent summary judgment evidence establishes no unconstitutional use of excessive force."  (Docket No. 104, at 4.)  First, Defendant Montiel argues that the force he used was "reasonable and proportional to the level of resistance offered" by Plaintiff.  (*Id.* at 6.)  Defendant Montiel explains that:

> During [his] attempt to detain and handcuff the Plaintiff, the Plaintiff repeatedly prevents handcuffing by violently moving his hands away; attempts to run away; struggles on the ground to prevent putting his hands behind his back; thrashes about, moving his body and hands; resists Officer Montiel's attempts to cuff him or put his hands behind his back; and reaches back with a free hand in what Officer Montiel perceived was an attempt to gra[b] his duty belt/service weapon.

(*Id.* at 7.)  Defendant Montiel continues that the evidence shows that "[t]here is no chokehold; there is no pistol whipping; there is no tasing."  (*Id.*)  As to Defendant Hernandez, he "uses almost no force at all on Plaintiff."  (*Id.*)  Defendants also assert that "Plaintiff has no evidence to the contrary."  (*Id.*)

Next, Defendants argue that they are entitled to qualified immunity because "all force used . . . on Plaintiff was prior to Plaintiff having handcuffs on him."  (*Id.* at 10.)  In addition,

---

[5] Plaintiff also filed voluminous exhibits in support of his lawsuit, which can be located in the Clerk's office, in the McAllen Division of the Southern District of Texas.  However, according to Plaintiff, the other exhibits that he filed are in support of his other claims in this lawsuit, which have since been dismissed.  Stated another way, Plaintiff asserts that those other exhibits do not support his excessive force claims.  The undersigned has reviewed the exhibits, and agrees with Plaintiff.

Defendants responded "to Plaintiff's resistance with measured and ascending actions corresponding to Plaintiff's resistance." (*Id.* at 9-12.)

Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (Docket No. 110.) In his response he argues that Defendant Montiel "commit[ed] the illegal brutality" and that Defendant Hernandez "fix[ed] the paperwork." (*Id.* at 7.) He also continues to allege that Officer Montiel pistol-whipped him, illegally choked him, and assaulted him. (*Id.* at 8-10.) According to Plaintiff, Officer Montiel used "unauthorized tactics [which] are considered deadly force and were used without justification." (*Id.* at 14.)

To be sure, in Plaintiff's response to Defendants' motion for summary judgment—just as in his various pleadings in this lawsuit—he covers many topics. Many of them prove to be irrelevant to his remaining claims in this lawsuit. For instance, even though the City of Pharr is no longer a defendant in this lawsuit, Plaintiff continues to allege that the City of Pharr has engaged in "patterns of racketeering activity" and has "municipal liability under Monell." (Docket No. 110, at 2-3, 13, 16-18.) In addition, although the scope of this lawsuit has been narrowed to the incident involving his arrest in 2021, he continues to discuss other incidents that occurred in 2013 and 2017. (*See id.* at 4-7.) Finally, as reflected in the following passage, Plaintiff continues to struggle to separate his conspiratorial theories from the remaining claims in this lawsuit: "The Plaintiff claims that every time a new prosecutor or Judge a (Democrat) is taking office the Plaintiff gets arrested[;] Rene Guerra (D), Ricardo Rodriguez (D), Luis Saenz (D), [and] Toribio 'Terry' Palacios (D)." (*Id.* at 12.)

In any event, Defendants' pending motion for summary judgment will be evaluated according to the legal standard that applies to such dispositive motions.

## II.  ANALYSIS

## A.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Brown v. City of Hous., Tex.,* 337 F.3d 539, 540–41 (5th Cir. 2003).  A material fact is a fact which, under applicable law, may alter the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 271 F.3d 624, 626 (5th Cir. 2001).  A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson,* 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002).

"The moving party bears the burden of demonstrating that there exists no genuine issues of material fact."  *In re Vioxx Prods. Liab. Litig.,* 501 F. Supp. 2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."  *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  *See Anderson,* 477 U.S. at 248.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Id.* at 249–50 (citations omitted).  Summary judgment is also proper if the party opposing the motion

11

fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 247–48; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."). A party cannot defeat summary judgment with "'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Rather, a party must support any assertion that a fact cannot be or is genuinely disputed by "(a) citing to particular parts of materials in the record . . . ; or (b) showing that the materials cited do not establish the absence or present of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1). Affidavits cannot defeat summary judgment unless they contain competent and otherwise admissible evidence. FED. R. CIV. P. 56(c)(4). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley,* 201 F.3d 638, 643 (5th Cir. 2000).

**B. Excessive Force Claims**

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983, which imposes liability on any person, acting under color of state law, who deprives another of rights protected by the Constitution. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983)). As noted, pending is Defendants Montiel and Hernandez's motion for summary judgment. Defendants argue that "[t]he competent summary judgment evidence establishes no unconstitutional use of excessive force," and that both Officers "Montiel and Hernandez are

12

entitled to qualified immunity as to the excessive force claim against them." (Docket No. 104, at 4.) Plaintiff argues that Defendants used "deadly force" during his arrest "without justification." (Docket No. 110, at 14.)

Section 1983 alone does not create substantive rights; rather, it "creates a damages remedy for violation of federal constitutional or statutory rights." *Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from "'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir. 1986) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961)). "The Fourth Amendment governs 'all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen.'" *Rios v. Perez*, 777 F. Supp. 3d 727, 749 (W.D. Tex. 2025) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Courts analyze a claim for excessive force 'without regard to whether the arrest itself was justified.'" *Rios*, 777 F. Supp. 3d at 749 (quoting *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)).

The Fifth Circuit has explained the framework for evaluating excessive force claims as follows:

> To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005). Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396 (1989); *see also Brosseau v. Haugen,* 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.

13

*Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).  In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Rios*, 777 F. Supp. 3d at 750 (quoting *Graham*, 490 U.S. at 396).

Furthermore, practically speaking "[t]he second and third elements collapse into a single objective-reasonableness inquiry."[6]  *Rios*, 777 F. Supp. 3d at 750 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018)).  This inquiry is guided by the so-called *Graham* factors.[7]  The Court in *Rios* went on to explain:

> Additionally, courts must "consider 'not only the need for force, but also the relationship between the need and the amount of force used.'" *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)).  When dealing with "an uncooperative arrestee, officers properly use 'measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance.'" *Id.* (alteration in original) (quoting *Joseph*, 981 F.3d at 332–33). But "[a]n officer cannot use force against a citizen who has 'committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command.'" *Bagley*, 90 F.4th at 803 (quoting *Newman*, 703 F.3d at 762, 764).

*Rios*, 777 F. Supp. 3d at 750.

To begin with, Defendant's have submitted the Pharr Police Department's "Use of Force" policy, which mirrors the controlling case law.  (Docket No. 104-7); *see, e.g.*, *Rios*, 777 F. Supp. 3d at 750; *Graham*, 490 U.S. at 396.  The policy states that "[o]fficers shall use only the amount

---

[6] To be clear, Plaintiff alleges that he sustained injuries as a result of his arrest by Defendants Montiel and Hernandez.  (*See* Docket No. 1, at 5; Docket No. 52-2, at 40.) Furthermore, Defendants do not argue that Plaintiff did not sustain any injuries from his arrest, or that the injuries he sustained were de minimis.  *See Rio v. Perez*, 777 F. Supp. 3d 727, 750 (W.D. Tex. 2025) ("a de minimis injury is not cognizable under § 1983").  As such, the analysis in this report will focus on the other elements of an excessive force claim.

[7] Specifically, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose." (Docket No. 104-7, at 3.) "The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident." (*Id.*) The policy also permits an officer to "use reasonable force to effect an arrest" if the suspect "either flees or forcibly resists." (*Id.* at 3-4.) Some of the factors that the officer should "use to determine the reasonableness of force" include:

- Immediacy and severity of the threat to officers or others;

- Effects of suspected drugs or alcohol;

- The individual's ability to comply with officer commands;

- The degree to which the individual has been effectively restrained and his ability to resist despite being restrained; and

- Whether the person appears to be resisting or attempting to evade arrest by flight;

(*Id.* at 4.) Finally, the policy discourages the use of "vascular/respiratory neck restrains" or "chokeholds" and places further restrictions on their use. (*Id.* at 4-5.)

In addition, both Defendants Montiel and Hernandez acknowledge their awareness of "the Pharr Police Department Policy Manual" as well as the "use of force training" they have received. (Docket Nos. 104-5, 104-6.) Notably, in a "Declaration" the officers assert that "[a]ll of the force that I used against the Plaintiff on June 26, 2021, was reasonably necessary given the facts and circumstances perceived by me at the time of Plaintiff's arrest and were further in compliance with the City PD's use of force policy." (*Id.*) They further assert that "[a]t no time during my arrest of the Plaintiff or during his resistance, did I place the Plaintiff in a chokehold or pistol-whip him." (*Id.*)

15

In any event, as noted excessive force claims are "necessarily fact-intensive." *Graham*, 490 U.S. at 396. Stated another way, whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Id.* The Supreme Court in Graham listed the following factors as particularly instructive in evaluating whether the force used was excessive and/or unreasonable: 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Here, all three of the *Graham* factors weigh against a finding that the force used in Plaintiff's arrest rose to the level of excessive or unreasonable.

First; the severity of the crime. Defendant Montiel was the first police officer to arrive on the scene, and most of the incident included only him, and Plaintiff. As Officer Montiel approached the scene, he witnessed Plaintiff driving his car in a reckless manner (doing donuts) in the parking lot around other parked cars and bystanders. When Officer Montiel approached Plaintiff, he was exhibiting signs of alcohol consumption, including a strong odor of alcohol emanating from him. While public intoxication is not by itself a "severe" crime, Plaintiff's actions while under the influence considerably heightened the severity of the crime that Officer Montiel was responding to.[8] Furthermore, Plaintiff's reckless use of his car did place bystanders under an immediate threat of safety.[9]

---

[8] In addition, the "Use of Force" policy employed by the Pharr Police Department dictated that the officers should consider both the immediacy and severity of the threat to officers or others, as well as the effects of suspected drugs or alcohol when determining "the reasonableness of force" needed to subdue the suspect. (*See* Docket No. 104-7, at 4.)

[9] Plaintiff's actions during his active attempt at resisting arrest also placed Officer Montiel under an immediate threat of safety, as is explained in his attempts at grabbing or reaching for Officer Montiel's belt and/or gun.

Next; Plaintiff's active resistance and attempts to flee. From the beginning of the encounter, Plaintiff actively ignored Officer Montiel's verbal commands. For example, Officer Montiel observed Plaintiff attempting to reach into his front and back pockets multiple times. After repeated verbal warnings to stop were ignored, Officer Montiel warned Plaintiff to put his hands behind his back to be handcuffed, or else Officer Montiel was going to take him down to the ground.[10] Notably, the first seconds of the bodycam footage show Plaintiff resisting Officer Montiel's verbal commands.[11] *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance.").

Plaintiff's refusal to follow Officer Montiel's verbal commands and warnings then escalated into Plaintiff actively resisting his arrest. It is notable that the summary judgment evidence conclusively shows that Plaintiff's injuries were sustained after he began resisting, not before. *See Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008) (the Court emphasized that Bush sustained injuries while she was already "handcuffed and subdued"). Specifically here, Plaintiff refused to allow himself to be handcuffed while standing. Once Officer Montiel forcefully took Plaintiff to the ground, he continued to physically resist handcuffing. *See Bailey v. Ramos*, 125 F.4th 667, 682 (5th Cir. 2025) (The Fifth Circuit held that "takedown procedures like pushing a suspect and bringing him to the ground are lawful ways to gain control of and arrest a suspect before he has been handcuffed and subdued."). Notwithstanding Officer Montiel

---

[10] Of course, Officer Montiel used harsher and more colorful language during his attempts to get control of Plaintiff.

[11] Here again, the Pharr PD's "Use of Force" policy guided the officers to consider the suspect's ability to follow commands, the officer's ability to subdue the suspect, and the suspect's attempts to resist and evade the officer, when determining "the reasonableness of force" needed to subdue the suspect. (*See* Docket No. 104-7, at 4.)

17

on top of him, Plaintiff then still managed to get away from Officer Montiel, and he tried to run away twice.

To make matters worse, while Officer Montiel was attempting to get control of Plaintiff and handcuff him, Plaintiff kept reaching towards the right side of Officer Montiel's belt. Officer Montiel could feel Plaintiff repeatedly trying to grab "his stuff" and/or his "gun" from the right side of his utility belt. From the outset, Plaintiff's actions in resisting Officer Montiel's efforts to get control of him were active, not passive. *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022) (active resistance includes backing away from the police after being told to put your hands behind your back); *Cadena v. Ray*, 728 F. App'x 293, 296 (5th Cir. 2018) (same); *but see Ramos v. Erwin*, 723 F. Supp. 529, 543 (S.D. Tex. 2024) (citing *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) ("where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified")).

To further illustrate the level of resistance that Plaintiff exhibited, Officer Montiel attempted by himself to get control of Plaintiff in order to handcuff him for approximately 3:39 minutes prior to Officer Hernandez arriving. Once Officer Hernandez arrived, Plaintiff continued resisting to the extent that it still took both officers approximately 2:08 minutes to finally handcuff Plaintiff.

The summary judgment evidence shows that Officer Montiel used "measured and ascending actions" to address Plaintiff's escalating resistance. When dealing with "an uncooperative arrestee, officers properly use 'measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance.'" *Cloud*, 993 F.3d at 384 (quoting *Joseph*, 981 F.3d at 332–33). To put a fine point on it, Officer Montiel: 1) began with verbal commands; 2) then offered verbal warnings; 3) attempted to handcuff Plaintiff while standing; 4)

then took Plaintiff down to the ground; 5) attempted to get control of Plaintiff while in a prone position; 6) verbally warned Plaintiff that he would "step it up"; 7) used an open-hand strike; and 8) ultimately succeeded in hand-cuffing Plaintiff with the assistance of another officer. As the Court made clear in *Bagley*, an officer is permitted to use force against a citizen who "resist[s]," "fail[s] to comply with a command," "pose[s] [a] threat to anyone's safety," and "who has committed [a] crime." *See Bagley*, 90 F.4th at 803 (quoting *Newman*, 703 F.3d at 762, 764). That is what the summary judgment evidence shows Plaintiff did here.

In his pleadings, Plaintiff repeatedly alleges that Defendant Officer Montiel "illegally choke[d]" him. (*See, e.g.*, Docket No. 110, at 8-10.) To be sure, when Officer Hernandez arrives on the scene, Officer Montiel had already been attempting to subdue and handcuff Plaintiff unsuccessfully for almost four minutes. When Officer Hernandez arrives, his bodycam video shows that Officer Montiel has his left arm around Plaintiff's neck. This lasts for—at most—approximately eight (8) seconds. During this time, there is no evidence that Plaintiff was unable to breathe, or that Officer Montiel exerted so much force that Plaintiff's circulation was being compromised. In addition, as soon as Officer Hernandez was able to assist, Officer Montiel released his left arm from around Plaintiff's neck. Put simply, Officer Montiel's use of this restraint is not the same as attempting to choke Plaintiff. Furthermore, the summary judgment evidence does not show Officer Montiel choke Plaintiff three times, as he alleges.

Finally, since filing his original complaint, Plaintiff has repeatedly accused both Officers Montiel and Hernandez of repeatedly choking him, tasing him, and pistol-whipping him. (*See, e.g.*, Docket Nos. 1, 52-2.) Defendants categorically deny doing this. (*See* Docket Nos. 104-5, 104-6 ("At no time during my arrest of the Plaintiff or during his resistance, did I place the Plaintiff in a chokehold or pistol-whip him.").) The summary judgment evidence (bodycam

19

footage) from Plaintiff's arrest supports Defendants' position, not Plaintiffs. Throughout these proceedings, the undersigned has been appropriately lenient with Plaintiff, given his pro se status. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("it is settled law that the allegations of such a [pro se prisoner] complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'"). However, that is not a pass for Plaintiff to make bald assertions about what occurred. *See Anderson,* 477 U.S. at 247–48 (A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment.).

To be clear, most of this discussion has focused on Officer Montiel's actions during Plaintiff's arrest. Given the summary judgment evidence, this is not surprising. Plaintiff's arrest—for lack of a better phrase—was primarily a struggle between Officer Montiel and Plaintiff. Officer Hernandez arrived on the scene as back-up, after Officer Montiel requested help in subduing Plaintiff. To put a fine point on it, acting alone Officer Montiel was unable to subdue and handcuff Plaintiff after attempting to do so for almost four minutes. Once Officer Hernandez arrived, it still took both police officers over two minutes to get full control of Plaintiff.

In doing so, the summary judgment evidence shows Officer Hernandez helped to get control of Plaintiff by placing his knee on Plaintiff's back, while he was lying prone. That was the extent of the force that Officer Hernandez used during Plaintiff's arrest. Officer Hernandez's limited (and late) involvement in Plaintiff's arrest—and more importantly the force that he used—does not rise to the level of "excessive." Plaintiff's conclusory assertions to the contrary are unpersuasive. *See Anderson,* 477 U.S. at 247–48; *see also RSR Corp.*, 612 F.3d at 857 ("[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for

20

summary judgment."); *Delta & Pine Land Co.*, 530 F.3d at 399 (a scintilla of evidence will not defeat a summary judgment motion).

As such, Plaintiff has failed to establish a genuine dispute as to any material fact on this claim. *Anderson,* 477 U.S. at 250 (A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it.); *see also TIG Ins. Co.*, 276 F.3d at 759. Put another way, Plaintiff's claim that Defendants Montiel and Hernandez violated his constitutional rights by utilizing excessive force during his arrest should be rejected. The Court should grant summary judgment in favor of Defendants on this issue.

C.    **Qualified Immunity**

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "'The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramos v. Erwin*, 723 F. Supp. 3d 529, 538–39 (S.D. Tex. 2024) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

"It is Plaintiff's burden to establish that the doctrine of qualified immunity does not apply." *Ramos*, 723 F. Supp. 3d at 539 (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). "To do so, Plaintiff must (1) allege facts sufficient to 'make out a violation of a constitutional right,' and (2) show that the constitutional right 'was clearly established at the time of [the official's] alleged misconduct.'" *Ramos*, 723 F. Supp. 3d at 539 (quoting *Pearson*, 555

U.S. at 232). "A constitutional right is 'clearly established' if no reasonable officer would have thought the officer's acts passed constitutional muster." *Ramos*, 723 F. Supp. 3d at 539. "In other words, 'qualified immunity is warranted unless no reasonable officer would have acted as the officer did.'" *Ramos*, 723 F. Supp. 3d at 539 (quoting *Heckford v. City of Pasadena*, No. 4:20-cv-4366, 2022 WL 209747, at *3 (S.D. Tex. Jan. 21, 2022)).

Defendants argue that they "are entitled to qualified immunity as to Plaintiff's claim of excessive force. (Docket No. 104, at 9-12.) The undersigned agrees.

"[W]hile the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Lytle v. Bexar County, Texas*, 560 F.3d 404, 417 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). Viewing the evidence in the light most favorable to Plaintiff—evidence which includes videotapes that capture the arrest—it is clear that the force that Officers Montiel and Hernandez used in trying to subdue him "was not objectively excessive or clearly unreasonable."[12] *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). Similar to the situation in *Poole*:

- "It is undisputed that [Officer Montiel] repeatedly commanded [Plaintiff] to turn around and give up his right arm."

- "It is undisputed that [Plaintiff] did not do so."

- "[Plaintiff's] resistance was immediate and persistent."

- Officer Montiel "responded with verbal commands and attempted to grab [Plaintiff's] arm," before escalating his tactics.

---

[12] *See supra* Part II.B.

22

- Officer Montiel "pinned [Plaintiff] down when he refused to comply with [his] commands."

*See Poole*, 691 F.3d at 629.  "Viewed objectively, [Officers Montiel and Hernandez] responded with 'measured and ascending' actions that corresponded to [Plaintiff's] escalating verbal and physical resistance."  *Id.*  "This situation was 'tense, uncertain, and rapidly evolving,' and the officers' decision to use force to restrain [Plaintiff] was objectively reasonable."  *Id.* (quoting *Graham*, 490 U.S. at 397).

In addition, because Plaintiff "upon refusing to turn around and be handcuffed, posed an 'immediate threat to the safety of the officers' and 'actively resist[ed]' the officers' instructions, the use of force was not 'clearly excessive.'"[13]  *Poole*, 691 F.3d at 629 (quoting *Deville*, 567 F.3d at 167).  Similar to Officer Montiel's actions, other courts have found that the use of takedown maneuvers and "closed fist" punches to the head were reasonable uses of force when a non-subdued subject was "drunken, erratic" and actively resisting arrest.  *See Griggs v. Brewer*, 841 F.3d 308, 313-15 (5th Cir. 2016).

In any event, Plaintiff has failed to establish that "no reasonable officer would have acted as the officer[s] did" in their attempt to arrest him.  *Ramos*, 723 F. Supp. 3d at 539.  In sum, Plaintiff has fallen far short of establishing his burden that Defendants violated his known constitutional rights in connection with his arrest.  As such, Defendants are entitled to qualified immunity as to Plaintiff's claim stemming from their attempts to subdue him while he resisted.

---

[13] Furthermore, "[a]s a preliminary matter, to overcome qualified immunity, [Plaintiff] 'must specifically identify each defendant's personal involvement in the alleged wrongdoing.'"  *Ramos v. Erwin*, 723 F. Supp. 3d 529, 539 (S.D. Tex. 2024), aff'd, No. 24-20164, 2024 WL 5040984 (5th Cir. Dec. 9, 2024) (quoting *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024)).  As it relates to Officer Hernandez, this is another hurdle that Plaintiff's fails to clear.  Here again, Officer Hernandez's limited (and late) personal involvement in Plaintiff's arrest does not rise to the level for Plaintiff to overcome his qualified immunity.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that "Defendants' Motion for Summary Judgment" (Docket No. 104) be GRANTED and that this action be dismissed.

### NOTICE TO THE PARTIES

The Clerk shall send a copy of this Report and Recommendation to Plaintiff and counsel for the Defendants, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on February 3, 2026.

_____
Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE